[No. 1274.]

THE STATE OF NEVADA EX REL. ROBERT PATTERSON, ET AL. RELATORS, v. D. D. DONOVAN, SHERIFF OF STOREY COUNTY, RESPONDENT.

CONSTITUTIONAL LAW — POWER OF LEGISLATURE TO MAKE CLASSIFICATION OF COUNTIES—LOCAL AND SPECIAL LAWS.—The legislature has the power to make a classification of counties, based upon a voting population. The validity of such an act is not dependent upon the number of counties coming within the designated class. If in its operation and effect the act is so framed as to apply in the future to all counties coming within the class mentioned and is based upon real and substantial grounds — not illusory or odious in their character — it is neither local nor special within the meaning of the constitutional prohibition against the passage of local or special laws.

IDEM—ACT TO RESTRICT GAMING, (STAT. 1879, 114), CONSTITUTIONAL.— The act to restrict gaming, providing in section 7 that certain games shall not be carried on in any room of the first floor or story of any building, nor a license issued therefor in any county where more than 1,500 votes were cast at the general election last preceding the application, is not in violation of the constitution, (Art. 4, Sec. 20,) prohibiting local and special legislation, although at the time the application was made there was only one county in the state to which the law could apply.

APPLICATION for mandamus.

The facts are stated in the opinion.

M. N. Stone and W. E. F. Deal, for Relators.

I. The provision in section 7, "that in any county in which at the general election next preceding the time of application, were polled less than fifteen hundred votes, or in any county created after said general election," is both local and special legislation, and is prohibited by sections 20 and 21, Art. IV, of the constitution. The legislative intent was, as expressed in the section, to permit and license such games to be carried on in back rooms on the first floors of buildings in all counties of the state except such counties as might be excluded as the result of a false and illusory system of classification inhibited by such sections of the constitution. The legislative intent was. by confining such games to the back rooms of first floors of buildings, to exclude them from the observation of the public, and that purpose is effectually accomplished without

the arbitrary part of the proviso, which applies only to one county of the state. The following authorities sustain the foregoing: (*State* v. *Boyd*, 19 Nev. 43; *Earle* v. *San Francisco Board of Ed.*, 55 Cal. 490; *Ex parte Burke*, 59 Cal. 12; *State* v. *Cal. Mg. Co.* 15 Nev. 249; *Zeigler* v. *Gladdis*, 15 Vroom (N. J.) 365; *State* v. *Glenn*, 47 N. J. L. 105; *Ex parte* Falk, 42 Ohio, St 638; *McGill* v. *State*, 34 Ohio St. 228; *Maize* v. *State*, 4 Ind. 342; *Com.* v. *Patton*, 88 Pa. St. 260; *Devine* v. *Comm'rs*, 84 Ill. 590; *State* v. *Con. Virg. Mg. Co.* 16 Nev. 441.)

II. The foergoing proviso in section 7 of the act, is unconstitutional and void, for the reason that it is in violation of the fourteenth amendment of the federal constitution. (*Yick Wo* v. *Hopkins*, 118 U. S. 356; *Ole Kow* v. *Nunan*, 5 Saw. 565 and note; *In re Ti Loy*, 11 Saw. 472; *Ex parte Spinney*, 10 Nev. 334.)

III. The gaming act is not a mere police regulation, but is and was intended by the legislature to be a law to punish as a crime by fine and imprisonment, a violation of its provisions. Under the twentieth section of article four of the constitution, the legislature had not the power to make the carrying on of such games a misdemeanor in one county and a lawful business in another.

IV. The unconstitutionality of the part of the proviso in the seventh section of the act referred to, does not affect the remainder of the act, and it can be enforced equally and in all counties of the state as a complete enactment without such void part of the section. (Cooley Con. Lim. 176–180; *Evans* v. *Job*, 8 Nev. 342; *State* v. *Eastabrook*, 3 Nev. 180; *State* v. *Rosenstock*, 11 Nev. 147; *Robinson* v. *Bidwell*, 22 Cal. 386; *Santo* v. *State*, 2 Iowa, (Clarke,) 206, 63 Am. Dec. 487; *Warren* v. *Mayor*, 2 Gray, 99; *Com.* v. *Hitchings*, 5 Gray, 485; *Com.* v. *Kimball*, 24 Pick. 362; 35 Am. Dec. 356.)

*F. M. Huffaker*, District Attorney of Storey County, for Respondent.

I. Regulating gaming is within the police power of the state, (Friedman on Police Power, 291,) and such legislation as is within the police power of the state is not limited by any constitutional inhibition as to the manner of its exercise; without such inhibition the power is plenary. (*Ex parte Ah Toy*, 57 Cal. 92.)

II.   The proviso in section 7 is not special legislation.   The question is, does the proviso concern a misdemeanor?   If not, it does not come within sections 20 or 21 of the constitution, and is therefore valid.   The only feature of section 21 which is penal, is permitting a minor in a licensed room, and this is general.   (Stat. 1875, 128.)

III.   Legislative classification by population is not inhibited by any provision of the constitution and is proper.   (Authorities reviewed.)

By the Court, HAWLEY, J.:

This is an application for a writ of *mandamus,* to compel repondent, the sheriff of Storey county, to issue a license to relators to carry on a game of faro in a back room on the first floor of the International Hotel building in Virginia City.   It is alleged in relator's petition, and admitted by respondent, " that Storey county is the only county in the state that cast fifteen hundred votes, or over, at the last general election."   This proceeding was instituted for the purpose of testing the validity of section 7 of " An act to restrict gaming," approved March 8, 1879, which reads as follows:

"Sec. 7.   None of the above mentioned games shall be carried on nor shall any license issue to carry on the same, in any room of the first floor or story of any building; and when any building has two first floors or stories, the other being or fronting on another street, then, and in such case, no license shall issue to carry on any of said games in any room on or in either ·of said first floors or stories of such building; *provided,* that in any county in which, at the general election next preceding the time of application, were polled less than fifteen hundred votes, or in any ˙county created after said general election, the licensee shall be entitled to carry on his game in any back room of· the first or ground floor of any building; and if any person carrying on any of said games shall knowingly permit to enter or remain in any licensed room, any person under the age of twenty-one years, he shall be deemed guilty of a misdemeanor, and shall be punished by the same penalties for violation of its provisions as are prescribed in section 1 of this act."   (Stat. 1879, 116; Gen. Stat. 1263.)

Section 1, to which section 7 refers, reads as follows: " Each

and every person who shall deal, play, carry on, open, or cause to be opened, or who shall conduct, either as owner or employe, whether for hire or not, except under a license as hereinafter provided, any game of faro,    *    *    *    shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one thousand, nor more than three thousand dollars, or by imprisonment in the county jail not less than three months, nor more than one year, or by both such fine and imprisonment."

Relators claim that the clause in section 7 which requires the withholding of a license to carry on the game in any room on the first floor or story of any building in counties polling fifteen hundred votes and over is local and special legislation, and is in conflict with the provision in section 20, article 4 of the constitution, which prohibits the legislature from passing any local or special laws " for the punishment of crimes and misdemeanors," and that it also conflicts with section 21 of said article of the constitution.

The question as to what is and what is not local or special legislation has been so frequently and thoroughly discussed by this court as to render it unnecessary to again reiterate the general principles relating thereto. The facts presented in this case simply call in question the power of the legislature to make the classification specified in section 7. The general power to make a classification of counties, based upon a voting population, is expressly recognized in *Youngs* v. *Hall,* 9 Nev. 226; *State* v. *Woodbury,* 17 Nev. 355; and *State* v. *Boyd,* 19 Nev. 43. The right of the legislature to exercise this power is subject to many limitations and restrictions, several of which are stated in the *Boyd Case.* All acts or parts of acts attempting to create a classification of counties or cities by a voting population, which are confined in their operation to the existing state of facts at the time of their passage, or to any fixed date prior thereto, or which by any device or subterfuge excludes the other counties or cities from ever coming within their provisions, or based upon any classification which, in relation to the subject embraced in the act, are purely illusory, or founded upon unreasonable, odious, or absurd distinctions, have always been held unconstitutional and void. The legislature has no power or authority to pass such acts. (*State* v. *Boyd,* 19 Nev. 43, and authorities there cited; *State* v. *Hermann,* 75 Mo. 340; *State*

v. *Mitchell,* 31 Ohio St. 607; *Woodward* v. *O'Brien,* 14 Lea, 520; *Hightstown* v. *Glenn,* 47 N. J. Law, 106; *Devine* v. *Commissioners,* 84 Ill. 592; *Davis* v. *Clark,* 106 Pa. St. 384; *Morrison* v. *Bachert,* 112 Pa. St. 322.)

Does the classification as made in section 7 of the act under consideration come within any of the limitations above stated? Section 7 is based upon a voting population "at the general election next preceding the time of application" for a license. It is not limited to such counties only as may have been within the classification at the date of its enactment. It is not restricted in its operation to any particular county or counties. It is general in its terms and applies uniformly to all the counties in the state, and its operation and effect is to be determined by the increase or decrease of the voting population in the respective counties. At the time the act was passed there were four counties in the state that at the last general election had cast over fifteen hundred votes. The mere fact that at the present time there is but one county that at the last general election polled over fifteen hundred votes is immaterial. The validity of the act is not dependent upon the number of counties coming within the designated class. The principle which determines its constitutional validity is decided by ascertaining the effect of the law. If in its operation and effect it is so framed as to apply in the future to all counties coming within the class mentioned, it is neither local nor special, within the meaning of the constitutional prohibition against the passage of local or special laws. The classification in section 7 is not in any respect illusory or unreasonable in its character. The legislature in passing the act intended "to protect the keepers of public gaming houses from criminal prosecution when a proper license is procured." (*Scott* v. *Courtney,* 7 Nev. 421.) The acts constituting the offense of misdemeanor and the penalties and punishments imposed by the act apply alike to all persons engaged in carrying on the games, whether conducted in the back rooms of the first floors or in rooms in the second stories, and are not in any manner governed or controlled by the classification of votes in section 7. The keepers of the games, in whatever place they are allowed to be conducted and carried on, are subject to all the penalties and punishments imposed by the act, regardless of the question whether the county in which the games are carried on polled more or less

than fifteen hundred votes. There is, in this respect, no distinction or discrimination.

The legislature, in granting the privileges and giving the protection mentioned in the act, deemed it prudent and wise to impose certain restrictions, not only upon the keepers of the games, but upon the officers who were authorized to issue the license. The only restriction which has any reference to the classification in section 7, relates to the *place* where the games are to be carried on. In making this restriction the legislature decided that it was not advisable to allow any of the games to be carried on in the front room of the first floor of any building, where the games would be exposed to the public gaze of all the passers-by; that, if such games were to be carr.ed on under the protection of the law, they should be conducted not in the open public places, but might be carried on, in the counties where the voting population was less than fifteen hundred votes, in the back rooms on the first floor, and in more populous counties the place should be still more secluded; and no license should issue to carry on any of said games in any room on the first floor of any building. In the interest of public morals, as a matter of public policy, and a protection to the youth and unwary, it must be admitted not only that the legislature had the power, but that it was its duty, to designate the places where the games could be carried on without being exposed to public view. Whether they pursued the wisest course to accomplish this purpose was a question exclusively within the wisdom and discretion of the legislature. As no absurd or unreasonable distinctions were made, either with reference to the subject of the act or in the classification of votes, and as the classification and the object to be accomplished by it were real and substantial in their character, and the provisions of the section general in their terms, and uniform in their operation and effect, it follows that the entire section (7) is constitutional and must be upheld. The views we have expressed, and the conclusions we have reached, are sustained by abundant, and almost universal, authority. (*State* v. *Woodbury,* 17 Nev. 355–358, and authorities there cited; *Kilgore* v. *Magee,* 85 Pa. St. 411; *Darrow* v. *People,* 8 Col. 418; *State ex rel.* v. *District Court,* 16 Neb. 77; *Marmet* v. *State,* 45 Ohio St. 63; *Rutherford* v. *Heddens,* 82 Mo. 392; *Ewing* v. *Hoblitzelle,* 85 Mo. 75; *In re Church,* 92 N. Y. 4;

*Mason* v. *Spencer*, 35 Kan. 519; *Thomason* v. *Ashworth*, 73 Cal. 74; *Pritchell* v. *Stanislaus Co.*, 73 Cal. 310.)
*Mandamus* denied.