# TESORIERE v. DISTRICT COURT

No. 2782

August 4, 1927.                     258 P. 291.

1. STATUTES—SIX MONTHS' DIVORCE LAW HELD INITIATIVE ACT, NOT "REFERENDUM MEASURE," AND HENCE AMENDABLE BY LEGISLATURE.

People's act of 1922 (Stats. 1923, c. 214), requiring six months' residence, before suing for divorce, is an initiative act, not a referendum measure amendable only by popular vote under Const. art. 19, and hence could be amended by legislature, as was done by Stats. 1927, c. 96, reducing residential requirement to three months; "referendum measure" contemplated by such article being one duly enacted by legislature and thereafter referred to and adopted by people in whole or part as authorized by such article.

2. STATUTES—LAW ENACTED BY PEOPLE CANNOT BE AMENDED OR REPEALED BY DIRECT VOTE OF PEOPLE.

Law enacted by people in conformity to Const. art. 19, sec. 3, cannot be amended or repealed by direct vote of people, as provided in section 2, in view of express provision of initiative and referendum amendments of constitution that referendum applies only to measures passed by legislature.

3. STATUTES—AMENDMENT OF INITIATIVE SIX MONTHS' DIVORCE LAW BY THREE MONTHS' STATUTE CANNOT BE SUBMITTED TO PEOPLE FOR APPROVAL.

Amendment of people's act of 1922 (Stats. 1923, c. 214), requiring six months' residence before suing for divorce, by Stats. 1927, c. 96, reducing residential requirement to three months, cannot be submitted to people for approval under Const. art. 19; there being no law on which to predicate referendum petition, as provided in sections 1 and 2, nor any intention by adoption of initiative to curtail legislature's power over initiative measures, except as provided in section 3.

4. STATUTES—THREE MONTHS' DIVORCE LAW CONSTITUTIONAL.

Stats. 1927, c. 96, amending people's act of 1922 (Stats. 1923, c. 214), by reducing residential requirement for divorce from six to three months, does not violate Const. art. 4, sec. 17, with respect to its title, which is consistent with general object and purpose of act proposed by legislature and approved by people.

5. STATUTES—THREE MONTHS' DIVORCE LAW VALID.

Stats. 1927, c. 96, reducing residential requirement of people's act of 1922 (Stats. 1923, c. 214) for divorce from six months to three months, held not void as not purporting to amend existing law, but merely proposing initiative measure.

## C. J.–CYC. REFERENCES

CONSTITUTIONAL LAW—12 C. J. sec. 47, p. 703, n. 97.

STATUTES—36 Cyc. p. 942, n. 24 (new); p. 1031, n. 31; p. 1054, n. 41 (new).

ORIGINAL PROCEEDING (in prohibition) by Leonarda Tesoriere against the Second Judicial District Court of the State of Nevada in and for the county of Washoe, and George A. Bartlett, District Judge thereof. **Writ denied, and proceedings dismissed.**

*Harland L. Heward,* for Petitioner:

In 1920 initiative petition under Const. art. 19, sec. 3, was filed asking for change in divorce law. Measure was rejected by legislature in 1921, and legislative substitute was proposed and passed (Stats. 1921, 385) and approved by people at election of 1922. Stats. 1923, 389. At 1927 session attempt was made to further amend divorce law. Stats. 1927, 127. I contend this latter statute is unconstitutional and void, because legislative substitute was carried at 1922 election. Such law cannot be overruled, annulled or in any way made inoperative except by direct vote of people. Const. art. 19, sec. 2.

Legislative substitute is in nature of referendum. People had in mind sec. 2 of constitution when they passed sec. 3, of art. 19. Substitute was in nature of "law or resolution." Having passed by vote of people it cannot be annulled by legislature.

Though majority of electors did not vote on 1922 measure, intention of section 2 is that majority of electors who do vote controls. If majority abstain from voting they do not have effect of negative vote. They merely have no voice in matter.

Act of 1927 is obviously not attempt to amend divorce law. Title does not so state, nothing being amended but legislative substitute. Legislature of 1927 knew 1921 legislature had passed substitute, and 1927 legislature saw fit to amend substitute. Now that substitute was amended, it was duty of secretary of state to submit same to electors at next general election. Stats. 1921, 385.

Act of 1927 is valid as amendment of substitute, but can go no further. You cannot, by 1927 act, amend substitute and then maintain you are thereby amending section 22 of divorce act.

If 1927 act attempts to amend section 22 of divorce act, then title is defective as not expressing real subject. State v. Commissioners, 22 Nev. 399; Bell v. Court, 28 Nev. 280; State v. Gibson, 30 Nev. 353.

*Thatcher & Woodburn, L. D. Summerfield* and *McCarran & Mashburn,* for Respondents:

In 1920 initiative petition was filed to amend divorce law of 1861, which was presented to legislature of 1921 and rejected. Substitute measure was then proposed. Stats. 1921, 385. Initiative and substitute measures were submitted to voters at election of 1922. Initiative failed but substitute received approval of majority of electors who did vote thereon, though it failed by more than 3,471 votes of receiving majority of all electors voting.

Legislature of 1927 amended substitute (Stats. 1927, 126) reducing residence to three months and adding insanity as cause.

State legislature possesses legislative power unlimited, except by federal constitution and such restrictions as are expressly reserved. Gibson v. Mason, 5 Nev. 283; State v. Williams, 46 Nev. 263.

Amendment of 1904 (art. 19) was strictly referendum provision, relating only to right of majority of electors voting to approve or reject act of legislature.

Section 3 was added to art. 19 at election of 1912, reserving to people power of initiative.

Section 3 so amends section 1 that part of act can be submitted. There would have been no reference in section 3 to referendum as to general state legislation, if it had not been for desire to provide that sections or parts of acts could be submitted. As initiative measure cannot be amended, it was wise provision that substitute measure on same subject can be proposed. Substitute is initiative measure, under power reserved in section 3, and therefore subject to amendment after 3 years.

Initiative laws require majority of votes cast thereon and are subject to amendment. If referendum measure has majority of all votes cast at election it is immune

from legislative change without action of same dignity— a vote of the people.

If vote on substitute be construed as referendum under section 2, act is nevertheless subject to amendment because act did not receive majority of electors voting at election, though it did receive majority of those voting on measure itself. State police bill of 1908 was so amended in 1909. When constitutional or statutory provision requires majority of electors, bare majority of those voting on proposition is not sufficient. People v. Berkeley, 23 L. R. A. 838; 20 C. J. 206, 207.

Laws are not to be static. Power to amend is necessary as power to enact.

Title of 1927 act is complete; it not only refers to title of act to be amended, but also particular section. Act to be amended is legislative substitute for act affecting divorce. Art. 6, sec. 7, should be liberally construed. State v. Ah Sam, 15 Nev. 27; Worthington v. Court, 37 Nev. 213.

If possible, legislative act or valid part thereof will be construed so as to make it effective. Gibson v. Mason, supra; State v. Trolson, 21 Nev. 419.

Law was not amended in 1927 by title only, but revised section was reenacted at length. Const. art. 4, sec. 17. Amendment is repeal only in so far as it changes original. 36 Cyc. 1083, 1085; Barrows v. Co., 75 Fed. 794; Worthington case, supra.

It is clear intention was to amend act and not propose legislative substitute. Hall v. Dunn, 25 L. R. A. (N. S.), 193; Callahan v. Jennings, 27 P. 1055; Ely v. Holton, 50 N. Y. 598.

Legislature was but continuing recitals in original act; it was not reenacting them. Art. 4, sec. 17.

*M. A. Diskin, Brown & Belford, Platt & Sanford,* and *Norcross & Cheney,* Amici Curiæ:

Introduction of Stats. 1921, 305, shows it was initiative measure rejected by legislature; that different measure on same subject was proposed under art. 19, sec. 4, of constitution. Section 2 made it duty of secretary of

state to submit proposed amendment to people. Neither initiative nor substitute was then law. Not being law it could not be referendum. Sections 1, 2.

Petitioner fails to distinguish between initiative and referendum. Initiative gives people power to do what legislature failed to do; referendum gives them power to approve or reject what it has done. State v. Becker, 240 SW. 229. Stats. 1921, 385, was mere legislative proposal, which could not become effective until adopted by people. If legislature rejects initiative proposal it may propose different one on same subject; both are submitted to people. Art. 19, sec. 3. Sections 1 and 2 apply only to referendum provisions of section 3, but in no way affect initiative provisions of section 3. Initiative measure may be changed by legislature after three years; referendum only by people. Section 1, 2.

If we assume for sake of argument that act of 1923 proposing substitute was at time of proposal duly enacted as a law, we must conclude same was never adopted because, under art. 19, sec. 2, majority of those voting at election did not approve. On initiative, majority of electors voting on measure is sufficient.

Title of Stats. 1927, 127, is not defective. There is no necessity for initiative measure to have title as it is printed in full when proposed. Stats. 1921, 108, provided for submission of rejected initiative and substitute measures. When approval by referendum is sought, title alone is placed on ballot, with question, "Shall the act entitled * * * be approved?" 3 Rev. Laws, 1919, p. 2767; State v. Langworthy, 104 P. 428; State v. Erickson, 244 P. 287.

Title of initiative proposal of 1923 was clearly and definitely identified. While it did not become law until approved, yet when approved it became law with title indicated. After approval it was law, not proposal, and when amended in 1927, legislature clearly identified subject matter, and court could strike out all reference to title referring to "An act proposing a legislative substitute," and identify it as "An act enacted pursuant to the direct vote of the people, general election, 1922."

## OPINION

By the Court, SANDERS, C. J.:

This is an original proceeding in prohibition to test the constitutionality and the validity of an act commonly known as and called the "Three-Months Divorce Law of Nevada," approved March 18, 1927 (Stats. 1927, c. 96, p. 126).

In June, 1927, one Frank Tesoriere, as plaintiff, commenced an action in the court below against Leonarda Tesoriere, his wife, for a divorce upon the ground of cruelty. The complaint alleges:

"That said plaintiff is now and has been continuously a bona fide resident of, and actually, physically, and corporeally present in the county of Washoe, State of Nevada, for a period of three months and more, and less than six months, immediately preceding the commencement of this action."

The defendant, a nonresident, appeared in the action and interposed a demurrer to the complaint upon the ground "that the court has no jurisdiction of the person of the defendant or the subject matter of the action." The demurrer was overruled, and the defendant by court order was ordered to answer the complaint within the statutory period of ten days. Thereafter the defendant applied for prohibition from this court to prohibit and restrain the lower court and Hon. Geo. A. Bartlett, judge thereof, from proceeding to hear and determine said divorce action upon the ground that the statute of 1927 under which the court assumed jurisdiction is unconstitutional and invalid and that unless prohibited the respondents would proceed to hear and determine said divorce action to the injury of the petitioner. For answer to the petition, the respondents assert their jurisdiction and insist that the statute of 1922 (Stats. 1923, c. 214), as amended by the statute of 1927, is in all respects constitutional and valid, and that the petition for prohibition should be denied and the proceeding dismissed.

The statute in question is grounded upon article 19 of the constitution, and is the outgrowth of the provisions contained in section 3 of that article. The attack upon its constitutionality makes it necessary to set out in extenso article 19:

"SECTION 1. Whenever ten per centum or more of the voters of this state, as shown by the number of votes cast at the last preceding general election, shall express their wish that any law or resolution made by the legislature be submitted to a vote of the people, the officers charged with the duty of announcing and proclaiming elections, and of certifying nominations, or questions to be voted on, shall submit the question of the approval or disapproval of said law or resolution to be voted on at the next ensuing election wherein a state or congressional officer is to be voted for, or wherein any question may be voted on by the electors of the entire state.

"SEC. 2. When a majority of the electors voting at a state election shall by their votes signify approval of a law or resolution, such law or resolution shall stand as the law of the state, and shall not be overruled, annulled, set aside, suspended, or in any way made inoperative except by the direct vote of the people. When such majority shall so signify disapproval the law or resolution so disapproved shall be void and of no effect.

"SEC. 3. The people reserve to themselves the power to propose laws and the power to propose amendments to the constitution, and to enact or reject the same at the polls, independent of the legislature and also reserve the power at their option to approve or reject at the polls, in the manner herein provided, any act, item, section or part of any act or measure passed by the legislature, and section one of article four of the constitution shall hereafter be considered accordingly. The first power reserved by the people is the initiative, and not more than ten per cent (10%) of the qualified electors shall be required to propose any measure by initiative petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions, for all but municipal

legislation, shall be filed with the secretary of state not less than thirty (30) days before any regular session of the legislature; the secretary of state shall transmit the same to the legislature as soon as it convenes and organizes. Such initiative measure shall take precedence over all measures of the legislature except appropriation bills, and shall be enacted or rejected by the legislature, without change or amendment, within forty (40) days. If any such initiative measure so proposed by petition, as aforesaid, shall be enacted by the legislature and approved by the governor in the same manner as other laws are enacted, same shall become a law, but shall be subject to referendum petition as provided in sections one and two of this article. If said initiative measure be rejected by the legislature or if no action be taken thereon within said forty (40) days, the secretary of state shall submit the same to the qualified electors for approval or rejection at the next ensuing general election; and if a majority of the qualified electors voting thereon shall approve of such measure it shall become a law and take effect from the date of the official declaration of the vote; an initiative measure so approved by the qualified electors shall not be annulled, set aside, or repealed by the legislature within three (3) years from the date said act takes effect. In case the legislature shall reject such initiative measure, said body may, with the approval of the governor, propose a different measure on the same subject, in which event both measures shall be submitted by the secretary of state to the qualified electors for approval or rejection at the next ensuing general election. * * * "

In 1920 the electors, representing more than 10 per cent of the qualified electors, in conformity to section 3, proposed a measure by initiative petition entitled:

"An act affecting divorce and matters properly connected therewith, providing for interlocutory decrees of divorce in certain cases and eliminating what are commonly known as short-term decrees in divorce cases, and repealing section 22 of an act entitled 'An act relating

to marriage and divorce,' approved November 28, 1861, as amended, and all other acts or parts of acts in conflict herewith."

This proposed initiative measure was presented to the legislature of 1921 and was rejected. Thereupon the legislature, in conformity to section 3, with the approval of the governor, proposed a different measure on the same subject, and both measures were submitted by the secretary of state to the qualified electors for approval or rejection at the general election held November 7, 1922. The measure proposed by the legislature was approved by a majority of the qualified electors voting thereon, and the measure proposed by the initiative petition was rejected by a majority of the electors voting upon it. The legislative proposal so approved became a law from the date of the official declaration of the vote thereon in December, 1922.

The title of the act so approved is as follows:

"An act proposing a legislative substitute for 'An act affecting divorce and matters properly connected therewith, providing for interlocutory decree of divorce in certain cases and eliminating what are commonly known as short-term decrees in divorce cases, and repealing section 22 of an act entitled "An act relating to marriage and divorce," approved November 28, 1861, as amended, and all other acts or parts of acts in conflict herewith.' "

The text of the law so approved reads as follows:

" * * * Divorce from the bonds of matrimony may be obtained, by complaint, under oath, to the district court of the county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, if the latter be either the county in which the parties last cohabited, or in which the plaintiff shall have resided six months before suit be brought, for the following causes. * * * " Stats. 1923, c. 214.

The legislature in 1927 amended the "People's Law" of 1922, entitled as follows:

"An act to amend section 1 of an act entitled 'An act proposing a legislative substitute for "An act affecting

divorce and matters properly connected therewith, providing for interlocutory decrees of divorce in certain cases, and eliminating what are commonly known as short-term decrees in divorce cases, and repealing section 22 of an act entitled 'An act relating to marriage and divorce,' approved November 28, 1861, as amended, and all other acts or parts of acts in conflict herewith," presented to this legislature by the secretary of state upon initiative petition under section 3 of article 19 of the constitution, and to provide for the submission of a legislative substitute by the secretary of state of the qualified electors for approval or rejection at the next general election,' approved March 28, 1921, enacted pursuant to direct vote of the people, general election, November 7, 1922." Stats. 1927, p. 126.

The text of the amendment reads as follows:

"Divorce from the bonds of matrimony may be obtained, by complaint, under oath, to the district court of the county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, if the latter be either the county in which the parties last cohabited, or in which the plaintiff shall have resided three months before suit be brought, for the following causes. * * * "

1. With this extended review of the legislation leading up to the amendment of 1927, we come to the consideration of what is considered to be the most important question in the case which is, Is the "People's Law" of 1922 a referendum measure which can be amended only by a vote of the people as provided in article 19 of the constitution? But, although we state it as a question, the answer does not seem to us open to debate. A referendum measure, as contemplated by the article in question, is one which has been enacted in due form by the legislature and thereafter referred to and adopted by the people in whole or in part, as authorized by the article of the constitution mentioned. Such is not the history of the 1922 law; hence it is not a referendum measure, and therefore could be amended by the legislature, as was done by the 1927 act.

2. But we are met with the contention that a law enacted by the people in conformity to section 3 of article 19 should be so interpreted as to carry out the purposes of the people in adopting the initiative and referendum amendments to the constitution, and, when read together and so interpreted, no logical reason can be assigned why a law enacted by the people, from whatever source it originates, should not be amended or repealed except by a direct vote of the people as provided in section 2 of article 19. This position is untenable, and the reason is to be found in the express provisions of the amendments, which cannot be changed by a judicial interpretation that would result in the nullification of the plain meaning and mandate that the referendum applies only to a law, act, item, section, or part of any measure passed by the legislature. Had the people, by the adoption of the amendments, intended that laws enacted by the people as provided in section 3 should be subject to referendum, they would have so provided.

For reply to the petition for prohibition from this court the attorneys for respondents, as well as the attorneys amici curiæ, properly stated that the "People's Act" of 1922 was and is an initative act, which, upon the expiration of three years from the date it took effect, is amendable by the legislature at will. But since we are of opinion that the act is not a referendum measure, it is unnecessary to enter upon an extended discussion of the character of the act. It is sufficient to say that the legislature of 1927, in amending the act of 1922 by reducing the residential requirement of six months as provided therein, to three months, acted within its constitutional right, and therefore the amendment must stand.

3. In opposition to this conclusion it is submitted that, even though it be conceded that the legislative measure so approved by the people and enacted into a law is an initiative measure, to carry out the purpose of the people in adopting the initiative amendment of the constitution, no logical reason appears why the people should be deprived of the right to submit the amendment to the

people for approval or disapproval. This contention is untenable for two reasons: One, that the initiative measure was not enacted by the legislature and approved by the governor in the same manner as other laws are enacted, consequently there is no law upon which to predicate a referendum petition, as provided in sections 1 and 2 of article 19; second, that by the adoption of the initiative it was not the intention of the people to curtail the power of the legislature over initiative measures except in such manner and to such extent as is expressly stated in section 3.

4. It is contended that the statute under review is violative of section 17 of article 4 of the constitution in respect to its title. This contention is without merit. The title might have been more happily worded, but it is manifestly consistent with the general object and purpose of the proposal offered by the legislature and submitted to the people for approval or rejection, and, the voters having approved the act, it cannot be said that the people or the legislature were mislead or deceived by its title.

5. It is contended in the last place that the act is void for the reason that it does not purport to amend, and is not an amendment of, any existing law, but is merely a proposal of an initiative measure and consequently is of no force and effect. This contention is also without merit. It is clear that the legislature, in enacting the 1927 act, undertook to amend an existing law.

Entertaining these views, it follows that the petition for prohibition to issue from this court must be denied and the proceedings dismissed.

It is so ordered.

COLEMAN, J.: I concur.

DUCKER, J., concurring:

I concur, but desire to express my views on the main question discussed in the majority opinion.

The measure proposed by the legislature of 1921, approved by the governor and submitted to the people of this state and approved by them at the general election

of 1922, did not by referendum become enacted into a law which could not be amended except by a direct vote of the people, for three reasons, which are obvious from the provisions of sections 1 and 2 of article 19 of amendments to the constitution. These sections deal solely with the referendum and provide as follows:

"SECTION 1. Whenever ten per centum or more of the voters of this state, as shown by the number of votes cast at the last preceding general election, shall express their wish that any law or resolution made by the legislature be submitted to a vote of the people, the officers charged with the duty of announcing and proclaiming elections, and of certifying nominations, or questions to be voted on, shall submit the question of the approval or disapproval of said law or resolution to be voted on at the next ensuing election wherein a state or congressional officer is to be voted for, or wherein any question may be voted on by the electors of the entire state. * * *

"SEC. 2. When a majority of the electors voting at a state election shall by their votes signify approval of a law or resolution, such law or resolution shall stand as the law of the state, and shall not be overruled, annulled, set aside, suspended, or in any way made inoperative except by the direct vote of the people. When such majority shall so signify disapproval the law or resolution so disapproved shall be void and of no effect."

It will be observed from these provisions that three things must occur before a law is confirmed by the people so that it cannot be amended or repealed except by their direct vote: First, there must be a law; second, there must be the expressed wish of 10 per centum or more of the voters of the state that it be submitted to the vote of the people; and, third, a majority of the electors voting at a state election must signify approval of the law.

None of these essentials appeared in the procedure followed as prescribed by section 3 of said article 19 by which the said measure became a law. It was not a law when submitted, but a measure proposed by the legislature with the approval of the governor under the right

conferred by section 3.  It was not referred to the electors for their approval or rejection by the expressed wish of 10 per centum or more of the voters of the state, but by the legislature under said authority of said section 3.  It was not approved by a majority of electors voting at a state election, but by a majority of the votes cast for and against the measure.  Consequently it did not by referendum become enacted into a law that could not be amended by the legislature by reason of the prohibition of section 2 of article 19.

The law of 1922 came into force and effect by virtue of compliance with the method provided in section 3 of article 19, for a choice to be made by the people between a measure proposed by them and a different measure on the same subject proposed by the legislature.  This section, omitting the provisions concerning counties and municipalities, reads as follows:

"The people reserve to themselves the power to propose laws and the power to propose amendments to the constitution, and to enact or reject the same at the polls, independent of the legislature, and also reserve the power at their option to approve or reject at the polls, in the manner herein provided, any act, item, section or part of any act or measure passed by the legislature, and section one of article four of the constitution shall hereafter be considered accordingly.  The first power reserved by the people is the initiative, and not more than ten per cent (10%) of the qualified electors shall be required to propose any measure by initiative petition, and every such petition shall include the full text of the measure so proposed.  Initiative petitions, for all but municipal legislation, shall be filed with the secretary of state not less than thirty (30) days before any regular session of the legislature; the secretary of state shall transmit the same to the legislature as soon as it convenes and organizes.  Such initiative measures shall take precedence over all measures of the legislature except appropriation bills, and shall be enacted or rejected by the legislature, without change or amendment, within forty (40) days.  If any such initiative measure so proposed by petition as aforesaid, shall be

enacted by the legislature and approved by the governor in the same manner as other laws are enacted, same shall become a law, but shall be subject to referendum petition as provided in sections one and two of this article. If said initiative measure be rejected by the legislature or if no action be taken thereon within said forty (40) days, the secretary of state shall submit the same to the qualified electors for approval or rejection at the next ensuing general election; and if a majority of the qualified electors voting thereon shall approve of such measure it shall become a law and take effect from the date of the official declaration of the vote; an initiative measure so approved by the qualified electors shall not be annulled, set aside, or repealed by the legislature within three (3) years from the date said act takes effect. *In case the legislature shall reject such initiative measure, said body may, with the approval of the governor, propose a different measure on the same subject, in which event both measures shall be submitted by the secretary of state to the qualified electors for approval or rejection at the next ensuing general election.* The enacting clause of all bills proposed by the initiative shall be: 'The people of the State of Nevada enact as follows.' The whole number of votes cast for justice of the supreme court at the general election last preceding the filing of any initiative petition shall be the basis on which the number of qualified electors required to sign such petition shall be counted. The second power reserved by the people is the referendum, which shall be exercised in the manner provided in sections one and two of this article. * * * If the conflicting measures submitted to the people at the next ensuing general election shall both be approved by a majority of the votes severally cast for and against each of said measures, the measure receiving the highest number of affirmative votes shall thereupon become a law as to all conflicting provisions. The provisions of this section shall be self-executing, but legislation may be especially enacted to facilitate its operation."

It will be observed that the italicized part of the section above quoted deals with proposed measures, one by

the people through the initiative and the other proposed by the legislature with the approval of the governor as a substitute for the former, and not with any act or part thereof or measure passed by the legislature, which only are subject to referendum petition.

It is true, as stated in the majority opinion, that a law enacted by the people pursuant to section 3 is not subject to such petition.

Did the proposed measure become a law by reason of the initiative provisions of said article? If so, it was clearly subject to amendment by the legislature in 1927, for more than three years had expired from the date the act took effect. It was not a legislative-proof law by reason of the referendum clauses of the article, and if the method prescribed in said section 3 by which the legislative substitute became a law is not initiative in that the statute originated from the legislature instead of the people, it was within the power of the legislature to amend it at any time; for except where the right to legislate is withheld from the legislature by article 19, it has full authority therein by reason of section 1, art. 4, of the constitution, which provides:

"The legislative authority of this state shall be vested in a senate and assembly, which shall be designated 'The legislature of the State of Nevada.' * * * "

For the reasons given I am of the opinion that the legislative substitute, Stats. 1923, pp. 389, 390, approved by the people at the election of 1922, was subject to amendment by the legislature when it was amended by Stats. 1927, p. 126.