ACE FAIRBANKS, PETITIONER, v. JOSEPH S. PAV‑LIKOWSKI, JUSTICE OF THE PEACE, LAS VEGAS TOWNSHIP, LAS VEGAS, CLARK COUNTY, NEVADA, RESPONDENT.

No. 5270

YERKER ELVIRA TAYLOR, PETITIONER, v. HERMAN E. FISHER, JR., JUSTICE OF THE PEACE, LAS VEGAS TOWNSHIP, LAS VEGAS, CLARK COUNTY, NEVADA, RESPONDENT.

No. 5271

February 6, 1967                    423 P.2d 401

*Richard H. Bryan,* Public Defender, *Robert G. Legakes,* Deputy Public Defender, Clark County, for Petitioners.

*George E. Franklin, Jr.,* District Attorney, *R. Ian Ross,* Deputy District Attorney, Clark County, for Respondents.

## OPINION

By the Court, COLLINS, J.:

The above petitions were ordered consolidated for hearing and, in conference with the court, counsel for the respective parties stipulated the petitions might be construed as seeking quo warranto as well as prohibition, for the reason that if respondents have no jurisdiction, neither do they legally occupy the offices.

Petitioners were charged with crimes in the justice court of Las Vegas township, Clark County, Nevada. At preliminary hearings, each objected to the jurisdiction of the named justice of the peace, contending he had no jurisdiction in the

matter, nor that he lawfully occupied the office. Respondents ruled against petitioners. The issue is that the statute cannot be constitutionally applied under the circumstances hereinafter described, because, while appearing to be general on its face, it is in fact a special statute. We conclude petitioners are in error and deny the petitions seeking either quo warranto or prohibition.

The national census tabulated in April 1960 showed that Las Vegas township, as then existing geographically, had a population of 106,755 people and that the City of North Las Vegas (then included in the Las Vegas township) had a population of 18,422. On June 20, 1960, the Board of Commissioners of Clark County created a new township out of the Las Vegas township and designated it North Las Vegas township.

The 1965 session of the Nevada legislature enacted NRS 4.020(3), which reads:

"3.   From and after the 1st Monday in January 1967, there shall be one justice's court in each of the townships of the state having a population of 100,000 or more, as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce, for which two justices of the peace shall be elected by the qualified electors of the township at the general state election to be held in November 1966, and at each state general election held every 2 years thereafter."[1]

At the general election held on November 8, 1966 respondents were elected justices of the peace of Las Vegas township. They assumed office January 3, 1967 and have since been exercising the civil and criminal jurisdiction of their office, including the performance of marriages.

Petitioners contend respondents have no jurisdiction, requiring that they be prohibited from further proceedings for the reason that neither occupies the office lawfully. Petitioners' arguments are that Las Vegas township no longer had a population of 100,000 persons when North Las Vegas township was created out of it, but was reduced to 88,333 by a simple computation deducting 18,422 from 106,755. They say, the enactment of NRS 4.020(3) in 1965 operated nowhere within the State of Nevada because there was no township having a population of 100,000 (including Las Vegas township). Further, that it was improper and unlawful to certify to the electors of Las Vegas township that they were entitled to elect two

---

[1]Chap. 446, Stats. of Nev. 1966, 1221 and 1222.

justices of the peace because it was no longer the same geographical area with 100,000 or more population as shown in the 1960 census. Finally, though entitled to one justice of the peace in that township, it would be impossible to say which of respondents would have been elected had there been but one office to fill rather than two. In fact, they argue that persons other than either respondent might have been chosen by the people had they voted for but one office holder. Thus, while the statute NRS 4.020(3) is not unconstitutional, neither respondent was lawfully elected, holds office, nor has jurisdiction over these petitioners.

NRS 4.020(3), while inartfully drawn, was obviously intended by the legislature to operate in any township in Nevada, which by the 1960 census had 100,000 or more population within it. The fact it might apply only to Las Vegas township is of no moment, for if there were others, the statute would then too apply. It therefore conforms to the constitutional mandate that there shall be no local and special laws, and that general laws shall have uniform operation. Nev. Const. Art. 4, Sec. 20,[2] and 21;[3] Cauble v. Beemer, 64 Nev. 77, 177 P.2d 677 (1947).

---

[2]"Section 20.  Certain local and special laws prohibited.  The legislature shall not pass local or special laws in any of the following enumerated cases—that is to say:

"Regulating the jurisdiction and duties of justices of the peace and of constables, and fixing their compensation;

For the punishment of crimes and misdemeanors;

Regulating the practice of course [sic courts] of justice;

Providing for changing the venue in civil and criminal cases;

Granting divorces;

Changing the names of persons;

Vacating roads, town plots, streets, alleys, and public squares;

Summoning and impaneling grand and petit juries, and providing for their compensation;

Regulating county and township business;

Regulating the election of county and township officers;

For the assessment and collection of taxes for state, county, and township purposes;

Providing for opening and conducting elections of state, county, or township officers, and designating the places of voting;

Providing for the sale of real estate belonging to minors or other persons laboring under legal disabilities;

Giving effect to invalid deeds, wills, or other instruments;

Refunding money paid into the state treasury, or into the treasury of any county;

Releasing the indebtedness, liability, or obligation of any corporation, association, or person to the state, or to any county, town, or city

We are required to give a legislative enactment the effect intended if we can determine the intention. Ex parte Siebenhauer, 14 Nev. 365 (1879); Ex parte Iratacable, 55 Nev. 263, 30 P.2d 284 (1934). We cannot refuse to apply a law though inartfully drawn or worded if by interpretation the legislative purpose can be reasonably determined, or the means to accomplish it ascertained. State ex rel. Copeland v. Woodbury, 17 Nev. 337, 30 P. 1006 (1883).

The obvious purpose of NRS 4.020(3) was to provide an additional justice of the peace in any township in Nevada having an enlarged population. This would allow criminal and civil cases to be heard and disposed of expeditiously and not unusually delay the determination of valuable personal and property rights. The vast majority of people whose rights are judicially determined appear in inferior courts of our state.

The legislature chose in this case to use as a standard or measure the decennial census of the people living in any given township in this state. This may have been a poor choice of standards to employ because, as this controversy shows, its use has created confusion and uncertainty. That, however, is the right and prerogative of the legislature to use what measure or standard its wisdom directs. The census, regularly taken each 10 years, is a reliable, accurate count of population in a given area as of a given period of time. Perhaps it was that reliability which prompted the legislature to adopt it as the measure of population. The difficulty arises in the manner in which they directed it to be used as the measure or yardstick. Factually, it is undeniable that as of the 1960 census Las Vegas township did have over 100,000 people. Whether Las Vegas township had more or less than 100,000 people in 1965

of this state; but nothing in this section shall be construed to deny or restrict the power of the legislature to establish and regulate the compensation and fees of county officers, to authorize and empower the boards of county commissioners of the various counties of the state to establish and regulate the compensation and fees of township officers in their respective counties, to establish and regulate the rates of freight, passage, toll, and charges of railroads, tollroads, ditch, flume, and tunnel companies incorporated under the laws of this state or doing business therein."

[3]"Section 21. General laws shall have uniform operation. In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State."

when the act was passed or even in 1967 when petitioners assumed their office is immaterial and not controlling. By calculation, respondents suggest we should say, as a matter of law, Las Vegas township had but 88,333 population when North Las Vegas township was created out of it. But that is not the standard or measure the legislature directed to be used, and we say application of the standard directed by the legislature, the 1960 census and those following each 10 years, is a reasonable one rendering the statute capable of intelligent interpretation. Perhaps standards such as the number of civil and criminal cases docketed in the justice court of any township in a given year, or the vote cast and counted in that township for the member of Congress in the preceding general election would have been a better standard, generating less confusion and creating a continuing standard of accuracy. The legislators chose to use the census and they, not this court, create law.

We feel the present legislature might see fit, notwithstanding this opinion, to review NRS 4.020(3) and clarify other points of confusion which may exist or arise. The welfare of the people affected by the statute is, however, within their exclusive province.

The petitions seeking writs of prohibition and quo warranto are denied and the proceedings dismissed.

ZENOFF, J., concurring:

I concur with the result enunciated by Justice Collins but I readily concede the merit of the dissenting opinion. We are bound, however, to uphold the application of a valid statute wherever it is reasonable to do so. In this case the legislative intent is apparent, but the statutory standard compels a strained interpretation. Yet since Las Vegas Township did exist in 1960, as Justice Collins recites, and the population of that township was over 100,000, the yardstick of NRS 4.020, subsection 3, can be made to apply.

THOMPSON, C. J., dissenting:

The respondents are the newly elected Justices of the Peace of Las Vegas Township. These consolidated proceedings in quo warranto challenge their right to hold office and, if successful, will preclude their further handling of the criminal cases pending against the petitioners in the Justices' Court of Las Vegas Township. The right of each respondent to hold the office of Justice of the Peace rests upon the premise that

each was duly elected pursuant to the direction of NRS 4.020(3).[1] That statute was enacted in 1965 and directs that two justices of the peace shall serve one justice's court in each township "having a population of 100,000 or more, as determined by the last preceding national census." If that statute applies to Las Vegas Township, the respondents may continue to serve as Justices of the Peace. If the statute does not apply to Las Vegas Township, the purported election of each respondent to the office of Justice of the Peace was, and is void. It is my opinion that NRS 4.020(3) does not apply.

Our constitution forbids the enactment of a local or special law regulating the election of township officers and regulating the jurisdiction and duties of justices of the peace. Nev. Const. Art. IV., Sec. 20. Such a law must be general and of uniform application throughout the state. Nev. Const. Art. IV., Sec. 21. It is, of course, permissible to classify according to population without violating the proscription of Art. IV., Sec. 20. State vs. Donovan, 20 Nev. 75 (1887); cf. State vs. Boyd, 9 Nev. 43 (1885). I do not find any constitutional infirmity in NRS 4.020(3) as written, since it may apply equally to all townships coming within the class mentioned. Consequently, had the Las Vegas Township with its 1960 population of 106,755 people not been later divided, the 1965 statute would apply and two justices of the peace for that township would be authorized. This, however, is not the case presented to us.

Las Vegas Township was divided after the 1960 census was taken. Thus, the township listed in the census as having a population of 106,755 no longer exists. Only the name has been perpetuated. A national census has never been taken of the population of the Las Vegas township as it exists now, as it existed in 1965 when the legislation was passed, or at anytime. Any attempt to apply NRS 4.020(3) to a township created after the 1960 census was taken, requires a gross distortion of plain statutory language. Indeed, even if one ignores the obvious, and by sophistry considers that a census was taken in 1960 of the presently bounded Las Vegas Township, the statute cannot apply for want of the required population, since upon division the 1960 population of Las Vegas Township

---

[1]NRS 4.020(3) reads: "From and after the 1st Monday in January 1967, there shall be one justice's court in each of the townships of the state having a population of 100,000 or more, as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce, for which two justices of the peace shall be elected by the qualified electors of the township at the general state election to be held in November 1966, and at each state general election held every 2 years thereafter."

was reduced to no more than 88,333 persons. Respectfully, I suggest that the majority, by construction, has made NRS 4.020(3) a local or special law in direct violation of the interdiction of our constitution.

I share the concern of my colleagues about the effect of a decision in this case which would oust the respondents from office. Each has been acting as a justice of the peace for about six weeks and has handled the business of the Justices' Court of Las Vegas Township during that time. Ouster from office would perhaps nullify their actions and precipitate further litigation.[2] Notwithstanding this concern, I think it more important to preserve the integrity of our State Constitution. It is my judgment that todays opinion will work the greater evil as time passes.

I dissent.

---

[2]The legislature is presently in session and may write a new law to effectuate desired ends. Should such occur each respondent would probably be appointed to serve as a justice of the peace.