JOSEPH E. MATTHEWS, PETITIONER, v. STATE OF NEVADA EX REL. NEVADA TAX COMMISSION, RESPONDENT.

No. 5358

June 6, 1967                    428 P.2d 371

*Springer and Newton,* and *Robert A. Grayson,* of Reno, for Petitioner.

*Russell W. McDonald* and *Frank W. Daykin,* of Carson City, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

The Nevada Constitution provides that a proposal which has become law by referendum of the voters shall not be amended except by the direct vote of the people.[1] The purpose of this proceeding in prohibition is to determine whether the Local School Support Tax Law, enacted by the legislature in 1967, violates the constitutional proscription against amending a referred law, since its effect is to increase the rate of the Sales and Use Tax authorized by referendum of the voters in 1956. For the reasons hereafter expressed we hold that the 1967 Local School Tax Support Law does not offend that constitutional proscription, and is therefore, a constitutionally permissible taxing statute.

It is not useful to reproduce the two taxing laws. They are almost identical in language. Both bear upon the same objects of taxation; that is to say, each imposes a sales tax upon the

---

[1]Nev. Const. art. XIX, § 1(2) reads: "If a majority of the voters voting upon the proposal submitted at such election votes approval of such statute or resolution or any part thereof, such statute or resolution or any part thereof shall stand as the law of the state and shall not be amended, annulled, repealed, set aside, suspended or in any way made inoperative except by the direct vote of the people. If a majority of such voters votes disapproval of such statute or resolution or any part thereof, such statute or resolution or any part thereof shall be void and of no effect."

sale of tangible personal property, and a use tax upon the storage and use of tangible personal property. The rate of tax approved by the voters in 1956 is 2 percent, while the rate specified in the 1967 School Tax is 1 percent. The method of collecting the tax is the same. It is evident that the necessary effect of the School Tax is to increase the rate of the Sales and Use Tax from 2 percent to 3 percent. However, there is a major difference between the two since their purposes do not coincide. The Sales and Use Tax Act of 1956 was approved to provide revenue for the State of Nevada, and that tax is paid into the general fund. The School Tax was enacted to provide support for the public schools and the funds are earmarked for that purpose. Within this framework, the narrow question presented is whether the constitutional prohibition against amending a referred law (except by the direct vote of the people) precludes legislative power to enact a separate but identical tax for a different governmental purpose?

The answer must be found in an appreciation of our scheme of government and the desire to give appropriate effect to the several constitutional provisions bearing upon the problem. We are not here solely concerned with the referendum proscription. That provision is but a part of the constitutional scheme. Of necessity we must also pay deference to art. IV, § 1, vesting the power to make law in the legislature, and to art. XI, commanding the legislature to provide for public education.

From the beginning we have recognized that the legislature is vested with all governmental powers not expressly denied to it by the Constitution of the United States and the Constitution of Nevada. This principle was first declared with respect to taxation in Gibson v. Mason, 5 Nev. 283, 292 (1869), and has been reasserted from time to time. Riter v. Douglass, 32 Nev. 400, 109 P. 444 (1910); Tesoriere v. District Court, 50 Nev. 302, 258 P. 291 (1927). The power to tax is an essential attribute of sovereignty, Ex parte Robinson, 12 Nev. 263 (1877). Of course, the referendum clause, which was added to our constitution in 1904, is a limitation upon legislative power. However, it seems to us that a reasonable but narrow construction of the prohibition against amending a referred law is essential if these other important constitutional provisions are to be accommodated.

It follows that the voters approval in 1956 of a sales and use tax for the general fund cannot be a perpetual limitation

upon legislative power to impose the same kind of tax solely for the support of public education. Neither may the voters expression in 1956 be deemed a directive to future legislatures that the public schools are to be supported only through some other form of taxation. Instead, the 1956 referendum must stand for what it is—an approval by the voters of a 2 percent sales and use tax for the general fund of Nevada. That law exists today in the same form and for the same purpose. Such a construction of the referendum proscription gives full effect to that provision without intimidating the legislative power to tax for public education. Though we have been unable to find a case squarely on point, our view is supported by the rationale of State v. Pelosi, 199 P.2d 125 (Ariz. 1948) and Staples v. Bishop, 286 S.W.2d 505 (Ark. 1956).

Another constitutional provision not heretofore mentioned possesses relevance to the problem at hand, and lends strong support to the conclusion we have reached. Nev. Const. art. IV, § 17 provides, inter alia, that an act or section amended be re-enacted at length. This provision has been construed in a series of cases from State v. Trolson, 21 Nev. 419 (1893) to McCormick v. Sixth Judicial District Court, 69 Nev. 214, 246 P.2d 805 (1952). The most valuable discussion is found in State v. Cole, 38 Nev. 488, 151 P. 944 (1915) where the court quoted with approval the following language in Southern Pacific Co. v. Bartine, 170 F. 725 (C.C.D. Nev. 1909): "* * * when a new act is complete in itself, when it does not purport to be amendatory of any previous act, and requires no reference to another law to discover its scope and meaning, * * * though the new law has the effect of modifying a former law, it is not an amendatory statute * * *." That test is met here. The School Tax Act of 1967 is complete in itself, does not purport to be amendatory of the 1956 Sales and Use Tax Act, and no reference to the latter is needed to discover the scope and meaning of the school tax. The petition for prohibition is denied and this proceeding is dismissed.

ZENOFF, J., concurring:

Taxation is a specific legislative method of providing income with which to carry out governmental functions. State taxation is within the authority of the legislature. The question of the wisdom, justice or expediency of legislation is for the legislative body and not for the courts. If the cause is unpopular, and all taxes are, the avenue of the referendum is available to the people to repeal this school support tax act if they so choose.

While we are not immune from public expressions, we cannot be sensitive to it. Ours is purely a legal function, to determine the validity of the statute in the light of constitutional requirements. Of long standing is the firmly established principle that a statute is presumed to be constitutional, and in case of doubt as to its constitutionality the doubt must be resolved in favor of its validity. Caton v. Frank, 56 Nev. 56, 44 P.2d 521; Viale v. Foley, 76 Nev. 149, at 155, 350 P.2d 721 (1960). Indeed, in some states a statute will not be declared void unless its invalidity is, in the judgment of the court, beyond reasonable doubt. Verry v. Trenbeath, 148 N.W.2d 567 (N.D. 1967).

Justice Collins said in Fairbanks v. Pavlikowski, 83 Nev. 80, 423 P.2d 401, "We are required to give a legislative enactment the effect intended if we can determine the intention." I agreed, expressing the view that the presumption of validity must prevail whenever it is reasonable to do so. Here, the act now before us is distinctive in several major points. Its designated purpose is to make funds available to the schools from the one percent tax, the funds from the 1955 tax go into the general fund for all governmental purposes; the tax is one percent as against two percent called for in the 1955 statute; the one percent money goes back to the county of origin to be used for the support of their schools, and no such provisions appear in the 1955 Sales Tax statute.

If the 1955 sales tax were repealed by the voters, the 1967 act could stand alone. This must be considered as one of the factors used to determine its validity. We only know that the people voted on the amount, two percent, that they would accept as a sales tax. (A proposed increase to three percent was voted down in 1963.) However, we do know that though the amount of the tax levy was considered, it is clear that no specific use for the money was determined. It is reasonable to guess that the 1963 increase would have been approved by the voters if it had been earmarked for school uses, but we do not know and have no right to speculate.

Simply stated, the legislature, in its considered wisdom, enacted the 1967 school tax act and I do not feel that the petitioner has overcome the presumption of its constitutionality.

COLLINS, J., dissenting:

When the people of Nevada approved the sales and use tax of 1955 by referendum vote in 1956, they consented to three things. They gave their approval to the legislature to be taxed

upon purchase by them of tangible personal property[1] at the rate of 2 percent,[2] with the tax revenue produced to go to the general support of state government.[3] The incidence or burden of the tax was to fall squarely upon them as consumers.[4]

Because it was a legislative enactment referred to the people for their approval, the statute when approved by them stood as the law of the state.[5]

Thereafter it could not be "amended, annulled, repealed, set aside, suspended or *in any way* made inoperative except by the direct vote of the people." Article 19, Constitution of Nevada, Section 1(2). The otherwise unlimited power of the legislature was thus constitutionally limited *directly* and *indirectly* in amending the sales tax. This direct and indirect limitation extended, in my belief, to all three facets of this particular tax, i.e.: (1) as a tax upon the purchase of tangible personal property; (2) at the rate of 2 percent; (3) with the proceeds going to the general support of state government.

It would appear the legislature did indirectly what it could not do directly. Counsel for respondent State Tax Commission admitted during his argument that the legislature could not constitutionally raise the present sales tax to 3 percent or order that 1 percent of it be devoted to direct support of the schools instead of state government generally, without prior approval of the people. That would be a direct amendment of the sales tax and prohibited.

My colleagues feel that by calling the new tax a local school

---

[1] "372.105 Imposition and rate of sales tax. For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of 2 percent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state on or after July 1, 1955."

[2] See Footnote 1.

[3] See preamble to Chapter 397, Stats. of Nev. 1955, at page 762, which reads, "An Act to provide revenue for the State of Nevada; * * *."

[4] "372.110 Method of collection of sales tax. The tax hereby imposed shall be collected by the retailer from the consumer insofar as it can be done."

[5] Art. 19, Constitution of Nevada, Section 1(2) which reads: "When the majority of the electors voting at a state election shall by their votes signify approval of a law or resolution, such law or resolution shall stand as the law of the state, and shall not be overruled, annulled, set aside, suspended, or in any way made inoperative except by the direct vote of the people. When such majority shall so signify disapproval the law or resolution so disapproved shall be void and of no effect."

tax, fixing the rate at 1 percent, directing its reversion to the county of origin for support of the schools, and enacting it as a separate law, it avoids the clear import of Art. 19, section 1(2) of the Nevada Constitution. They concede the method of collecting the two taxes is identical and that the necessary effect is an increase in the present sales and use tax from 2 percent to 3 percent. But they say the purposes of the two taxes do not coincide and therefore it is constitutionally permitted.

I feel the people have clearly made known their views in the matter of sales and use taxes to the legislature. They limited the legislature not only as to source and rate, but also to purpose. A sales tax has a well known incidence or burden and affects the taxpayers in a clearly understood manner. Economically it casts a heavier burden on the low or fixed-income groups than upon the wealthy or increasing income groups, especially where food and drugs are taxed as they are in both the 1955 sales tax and the 1967 school support tax. The people simply said, and our constitution supports them, we do not want further taxes of this kind imposed upon us, regardless of what you might call them or where you intend to spend them without our approval in advance.

I would declare the 1967 local school support tax unconstitutional.