## ZIEMER v. BABCOCK & WILCOX.CO.

### No. 2706.

District Court, D. Nevada.

Feb. 17, 1938.

Harry Austin and Paul Ralli, both of Las Vegas, Nev., for plaintiff.

McNamee & McNamee, of Las Vegas, Nev., for defendant.

NORCROSS, District Judge.

This is an action by a former employee of defendant to recover the amount. of deductions from wages for transportation to the place of employment; also for penalties and attorney's fees, claimed under state statutes, and 'for similar assigned claims made by thirty-two other former employees.

Plaintiff's claim grows out of the fact that commencing with the spring of 1933 and ending with the fall of 1936, defendant was engaged in the building, fabrication, and installation of steel lining of the tunnels at Boulder Dam under a contract with the government of the United States. The contract contained the following provision: "The contractor shall also make such arrangements as may be expedient for subsistence of his employees and for transporting such employees between Boulder City and the fabricating plant and/or the site of the work at Hoover Dam."

The employees of defendant resided at Boulder City, approximately six miles from defendant's fabricating plant and seven miles from the site of the dam. Defendant provided seven transport trucks, having capacities of transporting from twenty-five to fifty employees to their respective places of employment. These trucks were operated daily on all shifts, and the number of employees so transported daily to and from Boulder City and the places of employment was approximately six hundred.

Upon entering the employ of defendant each employee was required to sign, as one of the conditions of his contract of employment, a printed card expressing an agreement to a deduction from his wages or salary of the amount of 10 cents per day as and for a charge for such transportation. Plaintiff and his assignors regularly accepted their pay checks to which was attached a stub itemizing deductions, including that for transportation. No protest

respecting such deductions appears to have been made by any employee until after the termination of the building contract about the time of the completion of the construction of the dam.

Before taking up the legal questions presented, a brief reference will be made to statements appearing in plaintiff's brief to the effect that defendant failed to take out a state license to operate motor carriers for hire with "the guilty knowledge and intent to defraud both the State and the Plaintiffs." Also, there appears the following ·statement: "The seven trucks would take from three to four hundred (300—400) workmen on a trip. This money was all clear profit to the defendant under a scheme to steal a dime a day from each workman, under a contract so covered up. In the aggregate this amounted to some $50,000.00. And the workmen paid. Plaintiffs were not in pari delicto."

Not only is it manifest that the total amount paid by the employees for transportation was not "clear profit" to defendant, but when there is considered the wages or salaries of at least seven motormen for approximately a thousand days, gas and oil for approximately twenty thousand miles of travel for each of the seven transport cars, upkeep, repairs, and depreciation, it is not apparent there could have been much, if any, profit. It does appear that the cost of transportation to the employee was less than 1 cent per mile.

■ It also appears that the highway between Boulder City and the damsite was, prior to the beginning of the dam construction, a seldom-traveled desert road to the Colorado river. The United States government for its purposes and at its expense made the road into a first-class highway, extending from Boulder City to the damsite. If it were material this might account for the defendant's failure to apply for or the state to demand a license. There is the additional fact that the defendant was not engaged in the business of a public carrier for hire. Intent to defraud, when material, is not presumed, but must be clearly proved.

■ It is conceded that the highway in question was and is a state highway, and,. hence, defendant was subject to the payment of a license for operating motor vehicles thereon where a charge for transportation was·imposed. Nevada Compiled Laws, § 4437.

■ Whether the statute is "a police measure" or "an excise tax measure" , was considered by the Supreme Court of Nevada in the recent case of Ex parte Iratacable, 55 Nev. 263, 30 P.2d 284, 288, and held to be "an excise tax measure."

■ The law is well settled that an executed contract may not be set aside because one of the parties thereto has failed to take out a license imposed for revenue purposes, and where a penalty only is imposed upon the party subject to such license. Mandlebaum v. Gregovich, 17 Nev. 87, 28 P. 121, 45 Am.Rep. 433; Wood v. Krepps, 168 Cal. 382, 143 P. 691, L.R.A.1915B, 851; Davis v. Boyd Co., 143 Ga. 600, 85 S.E. 752; Morgan v. Whatley, 205 Ala. 170, 87 So. 846; Hughes v. Snell, 28 Okl. 828, 115 P. 1105, 34 L.R.A.,N.S., 1133, Ann.Cas.1912D, 374.

■ The contract of employment entered into between plaintiff and defendant authorizing defendant to deduct a fixed charge for transportation was not rendered invalid by reason of any failure of defendant to take out a license to operate as a common motor carrier or contract motor carrier. Plaintiff, therefore, is not entitled to recover.

Judgment for defendant.