## THOMAS C. ACKLIN, ET AL., APPELLANTS, v. JOHN McCARTHY, ET AL., RESPONDENTS.

No. 11731

June 4, 1980                                    612 P.2d 219

GUNDERSON, J., dissented.

*Galatz, Earl and Biggar,* Las Vegas, for Appellants.

*Robert J. Miller,* District Attorney, and *S. Mahlon Edwards,* Deputy District Attorney, Clark County, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from a judgment dismissing with prejudice, NRCP 41(b), plaintiffs-appellants' complaint for declaratory and injunctive relief. We are asked to determine whether respondent McCarthy, Sheriff of the Las Vegas Metropolitan Police Department, was required to select appointive officers from those officers holding the highest civil service ranks in the

department. We hold that this action was not required by chapter 280 of the Nevada Revised Statutes and affirm the decision of the lower court.

The Nevada Legislature, in 1973, provided for the consolidation of city and county law enforcement agencies in counties with a population of 200,000 or more. 1973 Nev. Stats. ch. 568, §§ 1–37, at 915–22 (codified in NRS 280.010–.360). Each county with the stated population was to comply with the merger provisions on July 1, 1973. *Id*. § 11, at 916. The chief law enforcement officer of the consolidated department would be the county sheriff and the chief of police of the largest city would be second in command. NRS 280.290 (1), (2). Clark County, having a population greater than 200,000, abided by the legislative mandate and merged its county sheriff department with the police department of Las Vegas, the largest city in the county.

In November of 1978, respondent McCarthy was elected Sheriff of Clark County and assumed office on January 1, 1979. On December 4, 1978, Sheriff-elect McCarthy announced the promotions of several police officers to appointive positions which would take effect in 1979. This action included the promotion of a lieutenant to the position of assistant sheriff and the appointment of two sergeants and a detective to the position of commander. There were nine captains and eight lieutenants at a higher civil service level at the time. Appellants contend that appointive officer positions may be filled only with selections from the highest civil service ranks within the department and that, because respondent McCarthy failed to comply with this requirement, the appointments must be nullified.

Section 280.290 of our revised statutes is the provision with which we are primarily concerned.[1] Subsection 1 states that the

---

[1]NRS 280.290 provides:

Department chief, other executive officers.

1. The chief law enforcement officer, and except as limited or otherwise provided in this chapter the chief administrative officer in a department is the sheriff of the county in which a department is located. Except as otherwise specifically provided or limited, such sheriff shall continue to perform all of his duties and retain all of his powers as sheriff of the county.

2. Upon merger, the chief of police of the largest participating city shall be second in command of the department and shall be designated as undersheriff of the department.

3. Upon merger, the chiefs of police of other participating cities, the assistant chiefs of police of other participating cities, the chief deputies or deputy chiefs, or both, and the undersheriff of the county are entitled to obtain employment with the department in positions which their leadership abilities warrant.

chief law enforcement officer will be the county sheriff and subsection 2 indicates that, upon the merger, the chief of police of the largest city shall be the undersheriff. Subsection 3 provides that, upon merger, other police chiefs, assistant chiefs, and undersheriffs may obtain employment according to their leadership abilities.

Appellants maintain that subsection 5 requires that the appointive positions listed in subsections 2 and 3[2] now may be filled only with selections from the highest civil service ranks. We do not agree with this interpretation. Subsections 2 and 3 merely designate positions in the new department for the chiefs and deputy chiefs of the merging departments. The latter subsection indicates that, upon merger, leadership abilities would determine specific positions. According to subsection 4, those persons listed in subsections 2 and 3 were to retain an equivalent rank, upon merger, only until the expiration of the current term of office of the sheriff. If they were removed from a position without cause, they would retain their highest civil service rank.[3] Finally, any of the positions listed in subsections 2 and 3 could only be selected from the highest civil service rank in the department. We interpret this last section to refer to the positions which would be created upon the merger. Under such interpretation, after the merger was completed, the sheriff could fill the appointive positions without regard to civil service ranks. We emphasize that subsection 1 states that the sheriff shall retain all of his powers as sheriff unless specifically limited. We believe that one of these powers was that of appointments and that the limitation was effective only until the merger was completed.

---

4. Upon merger, all persons designated in subsections 2 and 3 shall retain an equivalent rank in the department at least until the expiration of the current term of office of the sheriff, except that such persons may be removed for cause. Each of the persons designated in subsections 2 and 3 shall hold and be entitled to return to the highest civil service rank if he is removed from his appointed position for reasons other than cause requiring termination.

5. The persons selected to fill any of the positions in subsections 2 and 3 shall be selected from the highest civil service rank in the department.

[2]Within the new metropolitan police structure, there is a distinction between the appointive ranks and the civil service ranks. The civil service ranks include, from the lowest position up, patrolman, sergeant, lieutenant, and captain. The appointive positions include commanders, deputy chiefs, assistant sheriffs, and undersheriff.

[3]This clause is indicative of the fact that the sheriff retained his power to appoint and dismiss. The limitation simply was that he could not summarily dismiss from the department officers who had had officer status within one of the merging departments.

Even assuming that the intent of the legislature could not be gleaned from this statute itself, we find that a reading of the entire statutory scheme demonstrates the correctness of the result we reach. An entire act must be construed in light of its purpose and as a whole. Thomas v. State, 88 Nev. 382, 384, 498 P.2d 1314, 1315 (1972); *Ex parte* Iratacable, 55 Nev. 236, 282, 30 P.2d 284, 290 (1934). The declaration of purpose was set forth in NRS 280.010(2). There, the legislature stated its desire "to provide the means whereby the respective law enforcement agencies of the cities and counties may merge . . . ." The final section, NRS 280.360, states that the provisions of the chapter "shall be construed liberally to effect the merger . . . without administrative difficulty, it being the intention of the legislature that the formation of departments be effected in an orderly manner." From these statutes, it is clear that the legislature was primarily concerned with the merger procedure and how positions would be affected by such a consolidation. We do not discern from these enactments that the legislature intended to preclude discretionary appointments once the process was completed. Indeed, NRS 280.290(4) states that a person in an appointed position could be removed "for reasons other than cause" although he would *return* to his highest civil service rank. The evident purpose was to assure officers of the pre-merger departments of employment security for a reasonable period of time in the new department.[4]

Appellants contend that because of the legislative uncertainty, it was necessary for the trial court to review the legislative history in order to resolve the controversy regarding the enactments. We disagree. Examination of legislative history and extrinsic aids, *see* Washoe County v. Baker, 75 Nev. 335, 338, 340 P.2d 1003, 1004 (1959), is not necessary in the instant case as we have determined a clear legislative intent from the language of the entire act. In any event, the evidence proffered by appellants is not of the type which is considered in determining legislative intent.[5]

---

[4] *See* note 3 and accompanying text *supra*.

[5] This evidence included the post-merger remarks of a police officer-member of a sub-committee, only remotely connected with the legislature and a legislator during a legislative hearing. The statements, even if relevant, were more similar to ambiguous individual opinions, *see* March v. United States, 506 F.2d 1036, 1314 n. 31 (D.C. Cir. 1974), than to clear statements by proponents at a legislative hearing. *See* Chicago & North Western Ry. v. United Transp. Union, 402 U.S. 570, 576 (1971). Additionally, the actions and remarks of

We conclude from the language of the entire statutory act that the legislature did not intend to preclude respondent sheriff from filling appointive positions with persons other than those with the highest civil service ranks.[6] We are unable to conclude that the management prerogatives of the sheriff were intended to be restricted in the manner appellants assert. The decision of the district court is affirmed.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

When Sheriff McCarthy selected several police officers for appointment to unclassified positions, and such officers were not of the rank of captain, his appointments violated Nevada law, specifically NRS 280.290(5), and 280.120(2). If there were any doubt concerning interpretation of the relevant statutes, plaintiffs offered abundant evidence to the Legislature's intent. Moreover, reason militates in favor of the interpretation for which the plaintiffs contend.

The district court apparently felt appointments to unclassified positions need be made from the rank of captain, or above, only at the time of the consolidation. This reasoning is contrary to the literal statutory language of 280.290(5) and 280.120, which states, "The resulting department shall operate under the provisions of this chapter." NRS 280.290(2), (3) and (5) reads as follows:

> (2) Upon merger, the chief of police of the largest participating city shall be second in command of the department and shall be designated as undersheriff of the department.
>
> (3) Upon merger, the chiefs of police of other participating cities, the assistant chiefs of police of other participating cities, the chief deputies or deputy chiefs, or both, and the undersheriff of the county are entitled to obtain

police department officials certainly did not constitute an official position by an agency required to administer certain laws. *See* Sierra Pacific Power Co. v. Department of Taxation, 96 Nev. 295, 607 P.2d 1147 (1980); Clark County School Dist. v. Local Gov't Employee Management Relations Bd., 90 Nev. 442, 530 P.2d 114 (1974).

[6]We are not persuaded by appellants' argument that the legislature was concerned only with continuity and proven ability as shown by a civil service rank. The legislature was primarily concerned that all officers retain their positions in the new department for a reasonable period of time. The fact that an officer has a certain civil service rank is not, in and of itself, indicative of his ability to handle an appointive position or demonstrative of capabilities superior to someone within or without the department who may be appointed by the sheriff.

employment with the department in positions which their leadership abilities warrant.

. . .

(5) The persons selected to fill any of the positions in subsections 2 and 3 shall be selected from the highest civil service rank in the department.

In addition to contradicting this clear language, it seems to me that my brethren are attributing a rather surprising intent to our Legislature. In effect, the majority hold that our Legislature did not intend to require the sheriff to accord recognition to merit in the police department's highest and most important positions, following formation of the unified department. As I see it, this means career officers may work the bulk of their professional lives, to achieve a captain's rank on merit, only to have others appointed over them, without regard to merit. I am unwilling to attribute such a divisive and demoralizing scheme to our Legislature.