THE CITY COUNCIL OF THE CITY OF RENO, APPELLANT, *v.* RENO NEWSPAPERS, INC., A NEVADA CORPORATION, RESPONDENT.

No. 18206

December 28, 1989 784 P.2d 974

[Rehearing denied April 17, 1990]

*Patricia Lynch,* City Attorney and *Carl F. Hylin,* Assistant City Attorney, Reno, for Appellant.

*Hardesty & Moss,* Reno, for Respondent.

## OPINION

By the Court, ROSE, J.:[1]

The City of Reno City Council (the Council) appeals a district court citation holding five members of the Council in contempt for violating an injunction that prohibited them from conducting closed meetings for the purpose of selecting public officers. We conclude that although the Council members violated Nevada's Open Meeting Law there is insufficient evidence to support the district court's criminal contempt citation.

### FACTS

Reno Newspapers, Inc. (Reno Newspapers) sued the Council in 1986 to force it to select Reno's new city manager in a session open to the public. At the time of the suit, the Council had eliminated all but two of the 75 city manager candidates and was about to make its final decision.

---

[1]THE HONORABLE ROBERT E. ROSE, Justice, participated in the decision of this appeal upon the record, briefs and recording of the oral argument.

The parties eventually settled their dispute by entering into a stipulation to judgment. In the stipulation, the Council admitted that it had violated Nevada's Open Meeting Law in its city manager selection process and it agreed to entry of a permanent injunction restraining it from conducting "any closed sessions in violation of Chapter 241 of the Nevada Revised Statutes in the future in connection with the selection of a public officer, as that term is defined in NRS 281.005." Pursuant to this stipulation, the district court entered a judgment permanently enjoining and restraining the Council from conducting any closed meetings in the future for the purpose of selecting a public officer, as that term is defined in NRS 281.005. The district court also expressly reserved jurisdiction over the city manager selection process until June 1, 1986.

Approximately ten months after entry of the injunction, the Council selected a new city clerk. The Council conducted the initial interviews of the applicants in a public session, but then announced the desire to go into a closed personnel session to discuss the applicants and asked the city attorney if this was legal. Although initially equivocal, the city attorney ultimately advised the Council members that it was permissible pursuant to NRS 241.030(1), provided they discuss only the character, alleged misconduct, professional competence or physical or mental health of the applicants. Mayor Pete Sferrazza, himself an attorney, voiced concern about the closed meeting violating the Open Meeting Law. A reporter for Reno Newspapers objected to the closed session and requested a recess so that his employer's attorney could appear and present arguments in opposition to it. Councilman David Howard asserted that the Mayor was permitting a young reporter to run the City Council meeting and abruptly left.

Acting on the city attorney's advice, Florence Lehners, Janice Pine, Gus Nunez and Catherine Wishart voted to meet in a closed personnel session. Walter Wilson and Peter Sferrazza opposed the motion. Six City Council members, Lehners, Wilson, Pine, Nunez, Howard and Wishart, along with the city attorney then met in a closed session. Mayor Sferrazza did not attend the twenty minute closed meeting.

The minutes of the closed meeting indicate that the Council members in attendance discussed only the character and professional competence of the applicants. The Council members then reconvened publicly, discussed the requirements of the city clerk's job, nominated two candidates, and proceeded to vote. Don Cook was selected as the new city clerk.

Thereafter, Reno Newspapers moved for an order compelling

the Council to show cause why it should not be held in contempt for violating the previously entered permanent injunction. The district court issued the requested order to show cause. In answer to the show cause order, the Council averred that the permanent injunction involved only the selection of the city manager and, by its terms, had expired, and that the five Council members who met in closed session had not violated the Open Meeting Law because they met only to discuss matters permitted by NRS 241.030(1).

After a hearing, the district court found that the four Council members, Florence Lehners, Gus Nunez, Janice Pine and Catherine Wishart, who voted to close the session were in violation of the permanent injunction. Each were fined $300. Councilman David Howard, who attended the closed meeting but who had not voted for it, was also found guilty of contempt and fined $500 for willfully violating the injunction. The district court assessed attorney's fees and costs against the Council.

## LEGAL DISCUSSION

I. *Effectiveness of Preliminary Injunction*

The stipulation for entry of judgment entered into by the parties concerned the selection of the city manager, but also stated that the Council would not violate NRS Chapter 241. NRS Chapter 241, Nevada's Open Meeting Law, however, contains an exception that permits closed meetings. Nonetheless, the judgment entered pursuant to the stipulation went beyond the stipulation's language by stating that the Council is permanently enjoined from "conducting any closed meetings in the future for the purpose of selecting a public officer."

The Council asserts first that the district court lost jurisdiction once the city manager was selected. While the district court expressly reserved jurisdiction until completion of the city manager's selection, the prohibition against selecting a public officer in private had no time limitation and was effective until withdrawn. A district court may enforce an injunction by subsequent contempt proceedings. *See* Conforte v. Hanna, 76 Nev. 239, 351 P.2d 612 (1960). Therefore, the injunctive prohibition was effective and binding on the Council when, less that a year hence, it considered the selection of another public officer, *i.e.*, the city clerk.

Since the district court had jurisdiction of the issue addressed

in the motion and order to show cause, we must next determine whether the district court erred in enjoining future conduct that would be in violation of the Open Meeting Law. The answer to this question is given by the Supreme Court of Florida's interpretation of a similar statute. In Board of Public Instruction of Broward Co. v. Doran, 224 So.2d 693 (Fla. 1969), the court stated:

> While it is well established that courts may not issue a blanket order enjoining any violation of a statute upon a showing that the statute has been violated in some particular respects (*see* Moore v. City Dry Cleaners & Laundry, 41 So.2d 865 (Fla. 1949)), nevertheless they do possess authority to restrain violations similar to those already committed. *See* Interstate Commerce Commission v. Keeshin Motor Express, 134 F.2d 228 (C.C.A.Ill. 1943). This Court may enjoin violations of a statute where one violation has been found if it appears that the future violations bear some resemblance to the past violation or that danger of violations in the future is to be anticipated from the course of conduct in the past. *See* National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 437, 61 S.Ct. 693, 700, 85 L.Ed. 930 (1941).

*Id.* at 699, 700.

The district court had a clear indication that the City of Reno had violated Nevada's Open Meeting Law. Coupled with the Council's stipulation to a judgment that would enjoin it from violating the Open Meeting Law in the future selection of public officers, this provided sufficient specificity and basis for entering the permanent injunction.

The final determination concerning the preliminary injunction is whether the injunction pursuant to stipulation was effective to the extent that it went beyond the language of the stipulation by expanding the activity that the city was forbidden to conduct, *i.e.,* the prohibition against the private selection of any public officer without respect to any exception contained in the Open Meeting Law.

Public officers can only be enjoined from acts that are unlawful or in excess of the officer's authority. State ex rel. Burger v. Myers, 495 P.2d 844, 846 (Ariz. 1972). Since the Open Meeting Law permits public bodies to close meetings in some circumstances, the blanket prohibition against ever closing a meeting involving the appointment of a public officer might have pre-

vented the Council from doing a lawful act. When an injunction against a public agency for failure to conduct an open meeting is too broad in scope, it may be modified on appeal and enforced as modified. *See* Sacramento Newspaper Guild v. Sacramento Co.Bd. of Super., 69 Cal.Rptr. 480 (1968). Thus, to the extent that the injunction was overly broad, we restrict and deny effect to its language in excess of that which prohibited the selection of a public officer in any closed session in violation of Chapter 241.

## II. *Nevada's Open Meeting Law*

The pivotal question now is whether the closed meeting that gave rise to this appeal violated Nevada's Open Meeting Law. We begin by observing that the legislature amended and strengthened the Open Meeting Law in 1977, but that the amendment also specifically sets forth an exception to the Open Meeting Law. Section 1 of NRS 241.030 provides that a public body may hold "a closed meeting to consider the character, alleged misconduct, professional competence, or physical or mental health of a person." Had the statute stopped here, there would be no question that the Council's actions were lawful. However, section 3 of NRS 241.030 enumerates certain things the Open Meeting Law does not permit, and, in NRS 241.030(3)(e), the statute clearly provides that the Open Meeting Law "does not permit a closed meeting for the discussion of the appointment of any person to public office or as a member of a public body."

The Council argues that it did not violate the prohibition against closing the discussion of the appointment of a public officer because the word "appointment" in the description of prohibited activity is the critical word and that the appointment (final selection) was done in public. If the statute merely referred to the appointment of a public officer, the Council's position would be much stronger. It, however, does not. When the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it. Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012, 1015 (1979). We conclude therefore that the clause "discussion of appointment" contained in NRS 241.030(3)(e) means all consideration, discussion, deliberation and selection done by a public body in the appointment of a public officer.

In McKay v. Board of Supervisors, 102 Nev. 644, 730 P.2d 438 (1986), we held that a public body did not violate the Open Meeting Law when it went into closed session *to discuss* the character, alleged misconduct, and professional competence of its

city manager because such private consideration was expressly authorized by NRS 241.030(1). We held, nonetheless, that the action of the public body in *terminating* the city manager in a closed session violated the law and did not fall within the above cited exception. 102 Nev. at 651, 730 P.2d at 443. We did not consider, however, the additional statutory language contained in NRS 241.030(3)(e) prohibiting "the discussion of the appointment" of a person to public office in private because the issue was not before us. Therefore, the *McKay* case is not dispositive of the situation here presented.

Statutory provisions should, whenever possible, be read in harmony provided that doing so does not violate the ascertained spirit and intent of the legislature. Ex Parte Iratacable, 55 Nev. 263, 283, 30 P.2d 284, 291 (1934); *accord* Acklin v. McCarthy, 96 Nev. 520, 523, 612 P.2d 219, 220 (1980) (entire act must be construed as a whole and in light of its purpose). In reviewing the Open Meeting Law, we start with the legislature's pronouncement of its intent that all public bodies must be open. *McKay v. Board of Supervisors, supra.* NRS 241.030(1) permits a public body to meet in closed session to consider a person's character, alleged misconduct, professional competence or physical or mental health. NRS 241.030(3)(e) limits the exception contained in NRS 241.030(1) by prohibiting a closed meeting for the discussion of the appointment of any person to public office. We believe that the section permitting closed meetings in certain cases and the blanket prohibition against discussing the appointment of a public officer in closed session can be read in harmony. Accordingly, we construe the statute as permitting public bodies to meet in closed session to consider a person's character, alleged misconduct, professional competence or health, except when the matter involved is a discussion of the appointment of a public officer. In such situations, any closure of a meeting violates the Open Meeting Law.

The Council argues that this is not sound policy because municipal governments should be able to consider sensitive matters concerning applicants for a public office in private, but make their final selection in public. While the Council's argument is not without merit, it is the legislature who is charged with making that decision and it has set forth an unequivocal prohibition against any closed meeting concerning the discussion of the appointment of a public officer.

Based on the foregoing, we conclude that the Council violated Nevada's Open Meeting Law, when it held a closed meeting for the purpose of discussing the character, alleged misconduct,

professional competence or physical or mental health of the applicants for the position of city clerk, a public office.

### III. Contempt of Court

We must now determine the nature, either civil or criminal, of the district court's contempt citation, and whether the evidence is sufficient to support its issuance.

Preliminarily, we note that the permanent injunction as entered could have been confusing to members of the Council. It enjoined the Council members from selecting a public officer in a closed session. By using the word "select," the Council and its attorney could have believed that the Council could hold a closed session to discuss those matters permitted by NRS 241.030(1), but that the final selection must be made in a public meeting. Although *McKay* involved a discussion of the potential termination of a public officer rather than his appointment, we did make a similar distinction in that case. We have already noted that the breadth of the injunction went beyond the stipulation to judgment and this too added some degree of uncertainty to the acts actually prohibited. Finally, the Council argues that it believed the injunction pertained only to the selection of the city manager and did not extend to the future selection of other public officers. While we have already rejected this argument, it does lend support to the Council's position that the Council was concerned only with the language of the two sections of the Open Meeting Law and the then recently decided *McKay* case, but not the permanent injunction.

The Council did not disregard the Nevada Open Meeting Law without giving it consideration. The Council members asked the city attorney if they could discuss the applications in private pursuant to NRS 241.030(1). The city attorney indicated that the Council members could, provided that they discussed only the character, alleged misconduct, professional competence and health of the individual applicants. The majority of the Council voted accordingly and then met in closed session.

The district court stated in its decision that while the contempt proceeding had some aspects of civil contempt, the primary purpose was to punish those who violated the injunction, and therefore was criminal in nature. We agree. Where a fine is imposed as punishment for violation of an injunction, the proceeding is criminal. Ex parte Sweeney, 18 Nev. 74, 76 (1883). Therefore, our analysis must be whether there was proof beyond a reasonable doubt to support the finding that the Council members were in criminal contempt of court; we must keep in mind

that criminal contempt of court concerns the violation of a penal statute and must be strictly construed in favor of those accused of violating its provisions. Maxwell v. Rives, 11 Nev. 213, 221 (1876).

NRS 199.340(4) states that "a person is in criminal contempt if he or she commits willful disobedience to the lawful process or mandate of a court." In Robey v. State, 96 Nev. 459, 611 P.2d 209 (1980), we considered the word "willful" when used in a criminal statute. In that case, a justice of the peace was convicted of willfully omitting to pay over fines he collected to the proper county official. The justice's defense was that he was never informed of the proper procedure for paying over the money and that some of it was inadvertently misplaced and then subsequently returned. We held that the judge's conviction must be reversed because one instruction defining the word "willfully" stated that the word does not require any intent to violate the law or to acquire any advantage. In holding that the act had to be accompanied by some conscious awareness of a wrongful act, we stated: "The word 'willful' when used in criminal statutes with respect to proscribed conduct relates to an act or omission which is done intentionally, deliberately or designedly, as distinguished from an act or omission done accidentally, inadvertently, or innocently." *Id.* at 461 (citations omitted).

The evidence in this case does not support a finding of criminal contempt of court. The injunction was somewhat ambiguous as to what conduct was proscribed and whether the injunction was effective indefinitely. The Council members considered two apparently conflicting sections in the Nevada Open Meeting Law and asked their city attorney for his opinion. The city attorney indicated that the Council could meet in closed session to discuss the applications for the position of city clerk based upon his reading of Nevada law, and the then recently issued *McKay* decision. Acting on his advice, the Council voted to meet in closed session and then conducted that meeting. This conduct does not show any conscious awareness of a wrongful act or the existence of a guilty mind. We therefore conclude that there was no willful violation of the district court's preliminary injunction.

IV. *Conclusion*

We affirm the district court's finding that the conduct of five members of the Council violated Nevada's Open Meeting Law and the preliminary injunction, but that there is insufficient evidence to support the finding that the five Council members were in criminal contempt of court. Council members Florence

Lehners, Janice Pine, Gus Nunez, Catherine Wishart and David Howard are exonerated from the finding that they were in contempt of court and fines assessed against them are vacated. Since Reno Newspapers is the prevailing party, and the Open Meeting Law (NRS 241.057) expressly permits attorney fees and costs to a successful plaintiff, the attorney's fees and costs assessed against the Council are affirmed.

SPRINGER, J., concurs.

MOWBRAY, J., concurring:

I agree with the majority opinion as far as it goes. However, I would also affirm the contempt ruling against the appellant. This ruling gives authority and meaning to the judgment in upholding the open meeting law in its entirety.

YOUNG, C. J., with whom STEFFEN, J., agrees, dissenting:

I respectfully dissent. I agree that the pivotal question is whether the closed meeting in question violated Nevada's Open Meeting Law. The controlling language is found in Chapter 241 of Nevada Revised Statutes.

The majority, in its opinion, states: "Section 1 of NRS 241.030 provides that a public body may hold 'a closed meeting to consider the character, alleged misconduct, professional competence, or physical or mental health of a person.' "[1]

The majority then continues:

> However, section 3 of NRS 241.030 enumerates certain things the Open Meeting Law does not permit, and, in NRS 241.030(3)(e), the statute clearly provides that the Open Meeting Law "does not permit a closed meeting for the discussion of the appointment of any person to public office or as a member of a public body."

Thereafter, the majority opinion argues: "NRS 241.030(3)(e) limits the exception contained in NRS 241.030(1) by prohibiting a closed meeting for the discussion of the appointment of any person to public office." The majority then concludes that because of this perceived limitation, the City Council violated Nevada's Open Meeting Law.

I submit the conclusion of the majority completely ignores the following underlined language in NRS 241.030(1): *"Nothing*

---

[1]The majority quote omits the first eleven words, namely "Nothing contained in this chapter prevents a public body from holding" and therein lies the difference between how my colleagues in the majority and I view the statutory intent.

*contained in this chapter prevents a public body from holding a closed meeting* to consider the character, alleged misconduct, professional competence, or physical or mental health of a person." (Emphasis added.)

NRS 241.030(3)(e), which is the predicate of the majority opinion, is clearly included within *"[n]othing contained in this chapter."* Therefore, if there is a conflict between NRS 241.030(3)(e) and NRS 241.030(1), manifestly it was the intention of the legislature that NRS 241.030(1) should control—not NRS 241.030(3)(e). If the underlined language had been omitted in the statute—as it was in the majority quotation—then the construction of the two sections utilized by the majority is not unreasonable. If the underlined language is respected, however, I submit that the conclusion of the majority is untenable.

Perhaps more importantly, the majority view virtually suspends NRS 241.030(1) whenever persons who are candidates for public office are involved in the council's discussions. The council is thus precluded from discussing the character, alleged misconduct, professional competence or health of such persons notwithstanding the complete lack of statutory support for such a proposition. Rather than harmonizing the two statutes at issue, an easy task at worst, and giving effect to both, the majority has simply declared NRS 241.030(1) a nullity when directed at council discussions involving candidates for public office. I would never attribute such ineptitude to the legislature. Given the high profile of open meeting law legislation, it seems highly unlikely that the legislature would have overlooked the premise established judicially by the majority.

Moreover, if there is an ambiguity between the two subsections, I suggest that the ambiguity should be resolved in favor of the provisions of NRS 241.030(1) being deemed controlling. If criminal liability can be imposed, a statute should be strictly construed. The construction employed by the majority would subject those violating the provisions of NRS 241.030(3)(e) to criminal liability because Chapter 241 states that violation of the provisions thereof is a misdemeanor. Thus, under the reasoning of the majority opinion, the attorney general or district attorney is charged with filing a criminal complaint against members of the City Council. I submit such an unreasonable interpretation militates against the conclusion of the majority.

If the legislature had intended that NRS 241.030(3)(e) is to control, it would have eliminated the underlined language in NRS 241.030(1) above. But for these fourteen underlined words, I would agree with the majority.

If NRS 241.030(3)(e) is not controlling as reasoned above, I submit the actions of the City Council fully complied with NRS 241.030(1). *See* McKay v. Bd. of Supervisors, 102 Nev. 644,

730 P.2d 438 (1986). The record reflects that the Reno City Council, in filling the office of city clerk, interviewed the applicants in open session. The controverted meeting was closed for approximately twenty minutes with approval of its legal counsel while the council members discussed *only* the character and competency of the applicants. The council then immediately reconvened in open session, at which time two candidates were nominated with a vote being taken revealing applicant Don Cook as the newly chosen city clerk. Under the guidance set forth in McKay v. Bd. of Supervisors, *supra,* the Reno City Council conducted the meeting in a proper manner. Moreover, the council did not discuss the appointment of any individual in a closed session as prohibited by the statute. For the reasons stated above, I respectfully disagree with the opinion of the majority.

